UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BERNARD M. PLANTE

Plaintiff,

v.

**REPORT AND RECOMMENDATION**
**06-CV-0972 (LEK)**

MICHAEL J. ASTRUE[1]
COMMISSIONER OF SOCIAL SECURITY,

Defendant,

## I. Introduction

Plaintiff, Bernard M. Plante brings this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") for the period between October 12, 2002 and November 2, 2004.[2] Specifically, Plaintiff alleges that the decision of the Administrative Law Judge ("ALJ") denying his applications for benefits during the period at issue was not supported by substantial evidence and contrary to the applicable legal standards. The Commissioner argues that the decision was supported by substantial evidence and made in accordance with the correct legal standards.

For the reasons set forth below, the Court finds the Commissioner's decision is not supported by substantial evidence and not determined in accordance with the applicable law. Therefore, the Court recommends that the Plaintiff's motion for judgment

[1] Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.
[2] This case was referred to the undersigned for Report and Recommendation, by the Honorable Norman A. Mordue, pursuant 28 U.S.C. § 636(b)(1)(B), by an Order dated March 12, 2009.

on the pleadings be granted in part and Defendant's cross-motion for judgment on the pleadings be denied.[3]

## II. Background

On January 7, 2004, Plaintiff, then 52 years old, filed an application for SSI and DIB, claiming disability since October 12, 2002, because of a combination of injuries and impairments, including disc protrusions in the cervical spine, neck pain, scapular spasms, actinic keratosis,[4] squamous cell carcinoma[5] with metastatic disease,[6] headaches, left wrist nerve damage, left knee impairment, right foot impairment, and depression (R. at 40, 80-82, 86, 97, 128-34, 143-46).[7] His application was denied initially on July 7, 2004 (R. at 40-47). Plaintiff filed a timely request for a hearing on August 5, 2004 (R. at 50).

On May 5, 2005, Plaintiff and his attorney appeared before the ALJ (R. at 356-390).The ALJ considered the case *de novo* and, on June 23, 2005, issued a decision finding Plaintiff disabled as of November 4, 2004 (R. at 26-39). The ALJ's decision became the Commissioner's final decision in this case when the Appeals Council

---

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings . . . ." General Order No. 18. (N.D.N.Y. Sept. 12, 2003).

[4] Actinic keratosis is "a sharply outlined, red or skin-colored, flat or elevated, verrucous or keratotic growth that sometimes develops into a cutaneous horn or gives rise to a squamous cell carcinoma. It usually affects the middle-aged or elderly, especially those of fair complexion, and is caused by excessive exposure to the sun." Dorland's Illustrated Medical Dictionary 996 (31st ed. 2007) [hereinafter Dorland's].

[5] Squamous cell carcinoma "developed from squamous epithelium, having cuboid cells and characterized by keratinization and often by preservation of intercellular bridges. In the skin, it may originate in sun-damaged areas or other pre-existing lesions. Initially local and superficial, the lesion may later invade and metastasize." Id. at 297.

[6] Metastatic disease refers to "the transfer of disease from one organ or part to another not directly connected with it. It may be due either to the transfer of pathogenic microorganisms . . . or to transfer of cells, as in malignant tumors. The capacity to metastasize is a characteristic of all malignant tumors." Id. at 1162.

[7] Citations to the underlying administrative record are designated as "R."

denied Plaintiff's request for review on July 12, 2006 (R. at 6-8). On August 10, 2006, Plaintiff filed this action disputing his disability determination for the period of October 12, 2002 through November 2, 2004.

## III. Discussion

### A. Legal Standard and Scope of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383 (c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established the following five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v.

Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. §§ 416.920, 404.1520.

**B. Analysis**

Based on the entire record, the Court recommends remand because the ALJ failed to determine whether Plaintiff's skin conditions were severe, failed to consider Plaintiff's skin conditions throughout the decision, failed to consider Plaintiff's abilities to stand or walk on a function-by-function basis, and failed to include all Plaintiff's impairments in the hypothetical question, and therefore issued a decision unsupported by substantial evidence.

**1. The Commissioner's Decision**

The ALJ followed the sequential analysis and concluded that Plaintiff was disabled within the meaning of the Act as of November 3, 2004 (R. at 36). The ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 12, 2002 (R. at 31-32). At step two, the ALJ concluded Plaintiff had the following severe impairments: "back disorder (discogenic degenerative), affective disorder, and residuals of fracture of right foot" (R. at 32). At step three, the ALJ considered Listings 1.00, 1.04, and 12.04, but concluded that Plaintiff's impairments did not meet the requirements of any listed impairment (R. at 32-33). The ALJ considered Plaintiff's allegations of pain and other symptoms and concluded that Plaintiff was not entirely credible (R. at 33-34). In determining Plaintiff's residual functional capacity ("RFC") as of October 12, 2002, the ALJ concluded that Plaintiff was "limited in lifting, carrying, standing, and walking" but that "he retained the [RFC] to perform activities at the light exertional level. . . . [which] involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" (R. at 35). The ALJ

concluded Plaintiff "could not climb ladders, ropes or scaffolds," "could sit or stand for 15-20 minutes" before needing to alternate his position, could occasionally perform "other postural movements" like stooping, had to avoid using his lower extremities to operate push/pull controls, and had moderate difficulty with concentration, persistence or pace, such that he was limited to "simple, routine, unskilled tasks" (R. at 35). Based upon his RFC, the ALJ concluded that Plaintiff could not perform his past relevant work. Id. Then, relying in part on the testimony of vocational expert ("VE"), Dr. James M. Ryan, the ALJ concluded that other work existed in significant numbers in the national economy that Plaintiff could perform (R. at 36). Finally, the ALJ noted that the Medical-Vocations Rules directed a finding of disabled for a person with Plaintiff's characteristics, if that person was of "advanced age." Id. Noting that Plaintiff entered the "advanced age" category when he turned 55 years old on November 3, 2004, the ALJ concluded that as of that date, Plaintiff was disabled within the meaning of the Act (R. at 36-37). In doing so, the ALJ effectively found that Plaintiff was not disabled during the period from October 12, 2002 through November 2, 2004.

**2. Plaintiff's Claims**

Plaintiff argues the ALJ (a) erred by failing to find that Plaintiff's skin conditions were a severe impairment; (b) violated the treating physician rule; (c) assigned Plaintiff an RFC that was not supported by substantial evidence; (d) erred in relying on the testimony of an unqualified VE; (e) relied on VE testimony based on a hypothetical question that was not supported by substantial evidence; and (f) erred in relying on Medical-Vocational Rule 202.06. Plaintiff's Brief, pp. 15-24.

**a. The ALJ Erred by Failing to Determine Whether Plaintiff's Skin Conditions Were Severe**

Plaintiff first alleges that the ALJ erred by failing to find that the Plaintiff's skin conditions were severe. The record reveals that since at least October of 2001, Plaintiff had a history of actinic keratosis and squamous cell carcinoma (R. at 152-55, 171-74, 177). In August of 2004, Plaintiff found an enlarged lymph node under his left arm and was sent to oncologist, Dr. Atul Butala (R. at 270-72). At that time, Plaintiff reported feeling weak and tired, having occasional night sweats, and having lost twenty pounds over the past two years (R. at 270). Dr. Butala observed that Plaintiff appeared cachectic[8] and eventually diagnosed Plaintiff with metastatic disease (R. at 267, 271). Plaintiff underwent radiation therapy in November and December of 2004, and by January 11, 2005, Dr. Butala indicated Plaintiff's cancer was in remission (R. at 275-77, 335). The record shows that Plaintiff's skin conditions limit him to indoor work because he must avoid exposure to sunlight (R. 202, 217, 254-59). It is also possible that Plaintiff's radiation therapy caused Plaintiff to experience further limitations. See (R. at 277) (November 16, 2004 note from Dr. Butala indicating Plaintiff is on radiation therapy and "unable to work at this time" but not stating specific limitations).

An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[B]asic work activities" are the "abilities and aptitudes necessary to do most jobs," examples of which include, "walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; . . . seeing, hearing, and speaking; [u]nderstanding, carrying out, and remembering simple

[8] Cachectic is characterized by cachexia, which is "a profound and marked state of constitutional disorder; general ill health and malnutrition." Dorland's, supra note 4, at 272.

instructions; [using] judgment; [r]esponding appropriately to supervision, co-workers and usual work situations; [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b); see also S.S.R. 85-28, 1985 WL 56856, at *3-4.

In this case, the ALJ determined that Plaintiff had the following severe impairments: "back disorder (discogenic degenerative), affective disorder, and residuals of fracture of right foot" (R. at 32). However, the ALJ made no findings as to whether Plaintiff's skin conditions were severe.

Where an ALJ has omitted an impairment from step two of the sequential analysis, other courts have declined to remand if the ALJ clearly considered the effects of the impairment in the remainder of his analysis. See, e.g., McConnell v. Astrue, 2008 WL 833968, at *11-12 (N.D.N.Y. Mar. 27, 2008) (declining to remand where ALJ did not mention Plaintiff's carpel tunnel in the severity analysis but considered it at the RFC step and found no associated significant limitations in his functional assessment); Haskins v. Comm'r of Soc. Sec., 2008 WL 5113781, at *5 (N.D.N.Y. Nov. 25, 2008) (declining to remand where ALJ did not consider Plaintiff's right arm surgery in the severity analysis but nonetheless found related limitations in his RFC analysis). Such an approach is inappropriate here, because a careful review of the ALJ's decision reveals that he did not consider Plaintiff's skin conditions in the remainder of his sequential analysis. The evidence provided by Plaintiff presents a clear history of actinic keratosis, squamous cell carcinoma, and metastatic disease (R. at 152-54, 171-73, 181-82, 267, 270-72, 275-77, 316-17, 335). While the ALJ mentions Plaintiff's skin conditions in a summary of the medical evidence and mentions two medical opinions that Plaintiff should avoid sunlight (R. at 27-30), he does not rely on this evidence in his analysis.

Instead, the ALJ specifically relies on Plaintiff's back impairments, foot impairment, or depression in his analysis (R. at 34, 35). The ALJ does not even include Plaintiff's need to avoid exposure to sunlight in his RFC determination (R. at 31-39).

The Court notes that it is not obvious that Plaintiff's skin conditions were severe impairments because it is unclear what limitations they imposed on Plaintiff's "physical or mental abilit[ies] to do basic work activities." See 20 C.F.R. §§ 404.1521(b), 416.921(b) (examples of basic work activities include "walking, standing, lifting, pushing, pulling, reaching, carrying, or handling"). Thus, if Plaintiff's skin conditions only limit his ability to work outdoors, such a limitation may not satisfy the definition of a severe impairment because it does not involve a physical or mental ability to do basic work activities, as defined in the regulations. See 20 C.F.R. §§ 404.1521(a)-(b). Nonetheless, assuming arguendo, the Plaintiff's skin conditions are non-severe, Plaintiff was entitled to have even a non-severe impairment considered by the ALJ. See 20 C.F.R. § 404.1545(a)(2) (requiring the ALJ to consider non-severe impairments, when determining a Plaintiff's RFC); 20 C.F.R. § 404.1545(d) (including limitations due to skin impairments in factors an ALJ must consider in determining RFC). Moreover, "the propriety of agency action must be evaluated on the basis of stated reasons." Treadwell v. Schweiker, 698 F.2d 137, 142 (2d Cir. 1983). But in this case, the ALJ has not stated his reasoning with respect to Plaintiff's skin conditions. In this respect, the ALJ failed to set forth "the crucial factors in [his] determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984). Therefore, the Court recommends remand for further findings as to Plaintiff's skin conditions.

**b. The ALJ Did Not Violate the Treating Physician Rule in Discounting Dr. DeIorio's Opinion as to the Disability Date of Onset**

The Plaintiff next alleges that the ALJ violated the treating physician rule by discounting Plaintiff's treating physician, Dr. DeIorio's opinion as to the disability date of onset. However, the evidence supports the ALJ's conclusion that "Dr. DeIorio's opinion regarding the onset date is not supported by objective findings and is not consistent with the other evidence of record" (R. at 30). On May 3, 2005, Dr. Anthony DeIorio,[9] opined Plaintiff's disabling limitations began in October of 2003 (R. at 350). However, as the ALJ correctly pointed out, "the record shows no treatment for any significant condition in October 2003" (R. at 30). Instead, x-ray images from December 5, 2002 show no abnormalities in Plaintiff's cervical spine (R. at 165). It was not until January 30, 2004 that x-rays show some calcification and mild narrowing of the C5-6 space (R. at 164). Eventually, by March 2004, an MRI of Plaintiff's cervical spine showed a small central disc protrusion at the C4-5 level, a small left and paracentral protrusion and disc bulging at C5-6, and a more pronounced central and right paracentral disc protrusion attenuating the thecal space at the C6-7 level (R. at 216). Furthermore, there is no indication in the record that Plaintiff had any back, shoulder or neck pain prior to or in 2003. Thus, the Court finds, the ALJ's conclusion that the record does not support Dr. DeIorio's opinion that Plaintiff's limitations began in October of 2003 is supported by substantial evidence. Moreover, the ALJ gave an adequate explanation for rejecting Dr. DeIorio's opinion as to the date of onset. <u>See</u> <u>Martinez v. Barnhart</u>, 262 F.Supp.2d 40,

[9] Plaintiff's Brief and the ALJ's decision refer to Plaintiff's treating physician as "Delorio" but the record indicates that the proper spelling of his name is spelled with a capital "i", "DeIorio." For simplicity's sake, the Court will use the proper spelling throughout the recommendation.

48 (W.D.N.Y. 2003) (finding it improper for an ALJ to reject a treating physician's opinion as to date of onset "without any explanation").

Plaintiff argues that the ALJ substituted his own opinion for Dr. DeIorio's when he rejected the opined date of onset. Plaintiff's Brief, p. 18. As discussed above, there is no indication that the ALJ substituted his own opinion. Rather, the decision and record show that the ALJ correctly concluded that Dr. DeIorio's opinion as to the date of onset was unsupported. Plaintiff further argues that the ALJ improperly discounted Dr. DeIorio's opinion on the basis that it was retrospective. While the ALJ noted that Dr. DeIorio did not begin treating Plaintiff until January 2004 and nonetheless opined that his disabling limitations began in October 2003, a close examination of the record establishes that the ALJ did not rely on this fact to find Dr. DeIorio's opinion unsupported (R. at 30).

Finally, Plaintiff argues that "before giving Dr. DeIorio's opinion less than controlling weight, the ALJ was required to recontact him for clarification or further information relating to the date of onset." Plaintiff's Brief, p. 19. The regulations state that when evidence from a treating physician is inadequate for an ALJ to determine disability, he "will need additional information to reach a determination or a decision." 20 C.F.R. §§ 404.1512(e), 416.912(e). Thus, an ALJ "will seek additional evidence or clarification from [a claimant's] medical source when the report from [that] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1). In this case, the Court can detect no ambiguity in Dr. DeIorio's report, no insufficiency of

information, and no lack of diagnostic techniques. Instead, as the ALJ correctly pointed out, Dr. DeIorio's opinion that Plaintiff's disabling impairments began in October 2003 is simply contrary to the evidence of record and unsupported. Veino v. Barnhart, 312 F.3d 578, 588 (2nd Cir. 2002) (citations omitted) ("While the opinions of a treating physician deserve special respect . . . they need not be given controlling weight when they are contradicted by other substantial evidence . . .").

Therefore, based on a careful review of the record, the Court concludes the ALJ's determination that Dr. DeIorio's opinion on date of onset was not entitled to substantial weight was supported by substantial evidence.[10]

**c. The RFC Was Flawed Because it Failed to Incorporate Plaintiff's Skin Conditions and Failed to Consider Plaintiff's Abilities on a Function-by-function Basis**

Plaintiff further alleges that the ALJ assigned Plaintiff an RFC that was not supported by substantial evidence. The Court has already found that the ALJ erroneously omitted Plaintiff's skin conditions from consideration. Therefore, the Court agrees with Plaintiff's argument that the RFC is necessarily unsupported by substantial evidence. See Plaintiff's Brief, pp. 19-20; see also, supra, Part III.B.2.a. Plaintiff argues that the RFC was further flawed because if failed to consider Plaintiff's abilities to stand and walk on a function-by-function basis.

In this case, the ALJ determined Plaintiff's RFC as follows:

> [The ALJ found] that as of the alleged onset date, because of stiffness and some pain, the claimant was limited in lifting, carrying, standing, and

[10] Plaintiff does not argue that the treating physician's opinion was entitled to controlling weight as of May 2005, the date the ALJ asserts that the evidence supports his opinion. Therefore, the Court does not reach this issue.

walking. However, he retained the residual functional capacity to perform activities at the light exertional level. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds (20 CFR 404.1567(b) and 416.967(b)). He could not climb ladders, ropes, or scaffolds. He could sit or stand for 15-20 minutes but after that time he required an option to alternate his position. He could perform other postural movements, such as stooping, on an occasional basis. He had to avoid work requiring using his lower extremities to operate push/pull controls. Because of depression he had moderate difficulties in concentration, persistence, or pace, resulting in being limited to performing simple, routine, unskilled tasks. This assessment is consistent with the objective medical evidence, and the other evidence of record.

(R. at 35).

Although the ALJ's RFC determination was otherwise thorough, it failed to indicate Plaintiff's abilities to stand and walk on a function-by-function basis. Social Security Ruling ("SSR") 96-8p requires "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b),[11] (c),[12] and (d)[13] of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work. . . ." SSR 96-8p, 1996 WL 374184 at *1. The Northern District of New York has repeatedly found error where an ALJ failed to conduct a function-by-function analysis. See Miles v. Barnhart, 2008 WL 5191589, at *9 (N.D.N.Y. Dec. 8, 2008); Crysler v. Astrue, 563 F.Supp.2d 418, 437 (N.D.N.Y. 2008); McEaney v. Comm'r of Soc. Sec., 536 F. Supp. 252, 258-9 (N.D.N.Y. 2008); cf. Novak

[11] "Physical abilities. … such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)…." 20 C.F.R. § 404.1545(b).

[12] "Mental abilities. … such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting…." 20 C.F.R. § 404.1545(c).

[13] Other abilities affected by impairment(s). … such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions…." 20 C.F.R. § 404.1545(d).

v. Astrue, 2008 WL 2882638, at *3, n. 47 (S.D.N.Y. July 25, 2008) (quoting Casino-Ortiz v. Astrue, 2007 WL 2745704, at *13-14 (S.D.N.Y. Sept. 21, 2007)) (example of the Southern District of New York finding a function-by-function analysis not required, merely desirable). Therefore, on remand, the Court recommends that the ALJ specify all of Plaintiff's functional abilities on a function-by-function basis.

Finally, Plaintiff argues that the RFC was flawed because the ALJ failed to "find that [Plaintiff] was capable of work on a regular and continuing basis." Plaintiff's Brief, p. 21. As the Court has already found the ALJ's RFC determination is flawed and requires remand, the Court will not reach this argument.

**d. Plaintiff Forfeited his Objection to the VE's Qualifications by Failing to Object at the Hearing**

Plaintiff argues that the VE, Dr. James Ryan, was not qualified according the "standards set forth in the [Social Security Administration]'s Vocational Expert Handbook." Plaintiff's Brief, p. 21. Plaintiff argues that according to the Handbook, a VE is required to have "up-to-date knowledge of, and experience with, industrial and occupational trends and local labor market conditions." Plaintiff's Brief, p. 22 (quoting Vocational Expert Handbook 11 (S.S.A., Office of Hearings and Appeals, 1990). Based on Dr. Ryan's résumé, Plaintiff argues that he lacks "experience with the labor market local to [Plaintiff], or any placement of disabled individuals in occupations in central New York or anywhere in New York State." Plaintiff's Brief, p. 22. Defendant does not dispute that the Vocational Expert Handbook defines the qualifications for a VE in this case, but instead argues that Plaintiff's argument is "not sufficiently substantiated" because the

VE could have the requisite experience, but that it was not revealed by his résumé. Defendant's Brief, p. 12.

The Court concludes that Plaintiff's objections to the VE's qualifications are forfeited because they were not raised before the ALJ. The Court is aware that "the desirability of a court imposing a requirement of issue-exhaustion depends on the degree to which the analogy to normal adversarial litigation applies in a particular administrative proceeding," and that the Supreme Court has found the "analogy to judicial proceeding is at its weakest" in the area of Social Security. Sims v. Apfel, 530 U.S. 103, 109, 112 (2000) (holding that a claimant does not waive judicial review of an issue by failing to raise it before the Appeals Council, but not deciding whether a claimant must exhaust issues before an ALJ or waive judicial review).[14] However, with respect to the qualifications of a VE, the Northern District of New York has previously found that a Plaintiff's failure to raise objections at the hearing forfeits such objections before the district court. See, e.g., Harvey v. Astrue, 2008 WL 4517809, at *15 (N.D.N.Y. Sept. 29, 2008) (finding because Plaintiff "did not challenge the basis for the vocational expert's testimony and failed to raise any objection to the conduct of the ALJ until now" those objections were "forfeited"); see also, Haskins v. Comm'r of Soc. Sec., 2008 WL 5113781, at *16 (N.D.N.Y. Nov. 25, 2008) ("Plaintiff's failure to raise this issue before the ALJ effectively waived any challenge to the VE's qualifications, particularly in light of the opportunity he was given to question the VE . . ."). Objecting to a VE's qualifications at the hearing level may be particularly important, because, as another

[14] The requirement of issue-exhaustion with respect to a VE's qualifications is admittedly court imposed, as even the Supreme Court has observed, neither the Social Security Act nor the Commissioner's regulations require issue exhaustion. See Sims, 530 U.S. at 107-08.

district court has observed, it "afford[s] the [ALJ] full opportunity to select another vocational expert from the list of available experts." Davis v. Mathews, 450 F. Supp. 308, 313, 316 (E.D. Cal. 1978) (finding the VE unqualified as a matter of law and in accordance with a Social Security Handbook, where the Plaintiff objected at the hearing); but see, Ischay v. Barnhart, 383 F.Supp.2d 1199, 1222, n.15 (C.D. Cal. 2005) (suggesting that even where a Plaintiff objects to a VE's qualifications at the hearing, because "the Agency's Office of Hearings and Appeals determines the qualifications of its experts," if a VE "met the Agency's qualifications [that] settled [the] issue, and the ALJ had no business second-guessing it"). It is also reasonable to conclude that, similar to objections to the content of a VE's testimony, raising objections to a VE's qualifications at the hearing level allows the ALJ to inquire into the matter and determine whether a VE is reliable. See Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2002) (stating that "when no one questions the [VE]'s foundation or reasoning the ALJ is entitled to accept the [VE]'s conclusion, . . . [but] [i]f the basis of the [VE]'s conclusions *is* questioned at the hearing, however, then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable").

In this case, Plaintiff objected to Dr. Ryan's qualifications in a letter requesting review by the Appeals Council (R. at 14, 9-17) and again before this Court. Admittedly, unlike the objections in *Harvey* and *Haskins*, Plaintiff's objections to the VE's qualifications were raised to the Appeals Council, and before reaching the district court. Nonetheless, Plaintiff did not object to Dr. Ryan's qualifications during the hearing or to the ALJ. See (R. at 381-90). In light of this failure, the Court concludes Plaintiff forfeited his objections to the VE's qualifications.

**e. The ALJ's Hypothetical Question Was Not Supported by Substantial Evidence**

The Court further concludes that the hypothetical question was not supported by substantial evidence because it relied on a flawed RFC determination. As Plaintiff has argued, "[a] hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony." Bosmond v. Apfel, 1998 WL 851508, at *8 (S.D.N.Y. 1998) (citing De Leon v. Sec'y of Health & Human Servs., 734 F.2d 930, 936 (2d Cir. 1984)). There must be "substantial evidence to support the assumption upon which the vocational expert based his opinion." Dumas v. Schweiker, 712 F.2d 1545, 1554 (2d Cir. 1983). As this Court has concluded that the RFC was flawed in several respects, and because the hypothetical question to the VE mirrored the flawed RFC, the Court finds that the assumptions underlying the hypothetical question were not supported by substantial evidence.

Plaintiff has also argued that the VE's responses to the hypothetical question were flawed in several respects. Plaintiff's Brief, pp. 23-24. Because the Court has concluded the hypothetical question was flawed, the answers were necessarily unreliable. Therefore, this argument will not be discussed further.

**f. The ALJ's Findings at Step Five Were Necessarily Tainted**

Finally, Plaintiff argues that the ALJ erred at step five by relying on Medical-Vocational Rule 202.06, to find Plaintiff disabled only after age 55. Plaintiff's Brief, p. 24. As the Court has already concluded that both the RFC and the hypothetical question were unsupported, the Court concludes that the ALJ's findings at step five of the

sequential analysis are necessarily flawed. See, e.g., Groff v. Comm'r of Soc. Sec., 2008 WL 4104689, at *8 (N.D.N.Y. Sept. 3, 2008) ("The ALJ's erroneous RFC assessment necessarily tainted any determination made at Step Five as to whether Plaintiff could perform work available in the national economy . . ."). Thus, the Court concludes that on remand the ALJ will be required to reconsider his conclusions at step five.

## IV. Conclusion

Based on the foregoing, the Court recommends that Plaintiff's motion for judgment on the pleadings should be GRANTED in part, and Defendant's motion for judgment on the pleadings should be DENIED.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

DATED: May 19, 2009

Syracuse, New York

## Orders

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the

Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** Thomas v. Arn, 474 U.S. 140 (1985); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir.1989); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir.1988).

**SO ORDERED.**

DATED: May 19, 2009

Syracuse, New York

Victor E. Bianchini
United States Magistrate Judge